1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BUD E. MURPHY,

11            Plaintiff,                    No. 2:10-cv-01632 KJN

12        v.

13   MICHAEL J. ASTRUE,
     COMMISSIONER OF SOCIAL
14   SECURITY,

15            Defendant.                    ORDER
     _____/

16

17            Plaintiff, who is represented by counsel, seeks judicial review of a final decision

18   of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for

19   Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act

20   ("Act").[1]  In his motion for summary judgment, plaintiff contends that the administrative law

21   judge ("ALJ") in this case erred by: (1) not further developing the record regarding plaintiff's

22   claimed mental impairment of depression; (2) improperly rejecting the medical opinion of

23   Gregory White, M.D. ("Dr. White"), one of his treating physicians; (3) improperly rejecting the

24

25        [1]  This case was referred to the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed
     before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local
26   Rule 301.  (Dkt. Nos. 7-8.)

1

opinion of Cathy Metro, P.A. ("Ms. Metro"), a physician's assistant that intermittently saw

plaintiff; and (4) improperly discounting much of plaintiff's testimony as not credible.  (See

generally Pl.'s Mot. for Summ. J., Dkt. No. 11.)  The Commissioner filed an opposition to

plaintiff's motion and a cross-motion for summary judgment.  (Dkt. No. 12.)  Plaintiff did not

file a reply brief.  For the reasons stated below, the court denies plaintiff's motion for summary

judgment and grants the Commissioner's cross-motion for summary judgment.

I.      BACKGROUND[2]

On November 30, 2005, plaintiff filed an application for SSI, alleging a disability

onset date of October 14, 2005.[3]  (Admin. Tr. ("AT") 67, 111-16.)  The Social Security

Administration denied plaintiff's application initially and upon reconsideration.  (AT 67-68, 82-

91.)  Plaintiff requested a hearing before an ALJ, and the ALJ conducted a hearing regarding

plaintiff's claim on June 25, 2008.  (AT 35-66, 92.)  Plaintiff was represented by counsel at the

hearing and testified.  A vocational expert ("VE") also testified at the hearing.

In a decision dated August 8, 2008, the ALJ denied plaintiff's application, finding

that plaintiff could perform jobs that exist in significant numbers in the regional and national

economies.[4]  (See AT 24-33.)  The ALJ's decision became the final decision of the

_____

[2]    Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant the issues presented by the parties' respective motions.

[3]    Plaintiff previously sought SSI benefits based on an alleged disability onset date of January 1, 1991.  His claim for SSI was rejected on January 26, 2005, following a hearing before an ALJ.  (See Admin. Tr. 69-79.)

[4]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920,

Commissioner when the Appeals Council ultimately denied plaintiff's request for review. (AT 1-4.)  Plaintiff subsequently filed this action.

      B.    Summary of the ALJ's Findings

          The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful employment since November 30, 2005, the date plaintiff filed his application for benefits.  (AT 26.)  At step two, the ALJ concluded that plaintiff had the following "severe" impairments: "mild cardiac obstructive pulmonary disease; degenerative disc disease of the cervical spine; and history of hepatitis C."[5]  (Id.)  Relevant to plaintiff's motion for summary judgment, the ALJ found that plaintiff did not suffer from a severe mental impairment, including depression or anxiety.  (Id.)  However, the ALJ reviewed the assertion that plaintiff

416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

     The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id

    [5]  It appears that the ALJ inadvertently referred to the condition of "chronic obstructive pulmonary disease" as "cardiac obstructive pulmonary disease."

1    suffered from depression and anxiety and stated that "[a]ll of the claimant's nonsevere and severe

2    impairments were considered in combination in arriving at the residual functional capacity set

3    forth below."  (Id.)  At step three, the ALJ determined that plaintiff's impairments, whether alone

4    or in combination, did not meet or medically equal any impairment listed in the applicable

5    regulations.  (AT 26-27.)

6             Prior to reaching step four of the analysis, the ALJ determined plaintiff's residual

7    functional capacity ("RFC") as follows:

8             [T]he claimant has the residual functional capacity to lift and carry 20
              pounds occasionally and 10 pounds frequently; stand and walk six hours in
9             an eight hour workday; and sit six hours in an eight hour workday.  The
              claimant is precluded from walking long distances.  The claimant is
10            limited to occasional climbing of stairs, balancing, stooping, bending,
              crouching, crawling [sic] kneeling, overhead reaching, fingering and
11            handling.  The claimant is to avoid concentrated exposure to fumes, dust
              and air pollutants.

12

13   (AT 27.)  In assessing plaintiff's RFC, the ALJ addressed various aspects of plaintiff's testimony

14   and allegations that the ALJ found not credible, in part stating that plaintiff "is generally not

15   credible."  (See AT 27-29.)  The ALJ also discounted much of the opinions of Dr. White and Ms.

16   Metro.  (See AT 30-31.)

17            Having assessed plaintiff's RFC, the ALJ found at step four that plaintiff "is

18   unable to perform any past work" as an insulation installer.[6]  (AT 31, 41.)  At step five, the ALJ

19   concluded that considering plaintiff's age, education, work experience, the RFC, and the VE's

20   testimony, plaintiff was not disabled within the meaning of the Act.  (AT 33.)  Relying on the

21   VE's testimony, the ALJ determined that plaintiff could perform work in the representative

22   occupations of "table worker," "ticket taker," and "addresser," and that jobs in those occupations

23   existed in significant numbers in the regional and national economies.  (AT 32.)

24   ////

25
              [6] Plaintiff had worked as an insulation installer until 1991, when his employer went out of
26   business.  (AT 41-42.)

4

1    II.    STANDARDS OF REVIEW

2          The court reviews the Commissioner's decision to determine whether it is (1) free

3    of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

4    Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

5    Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

6    Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means

7    more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

8    reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc.

9    Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

10   1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

11   Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining

12   credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews,

13   53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he

14   ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  Findings

15   of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also

16   McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can

17   support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."

18   Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir.

19   2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's

20   decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

21   However, the court "must consider the entire record as a whole and may not affirm simply by

22   isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting

23   Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue,

24   504 F.3d 1028, 1035 (9th Cir. 2007).

25   ////

26   ////

5

1    III.    DISCUSSION

2          A.    The ALJ's Treatment of Plaintiff's Mental Impairment Was Not Erroneous

3                Plaintiff's first claim of error is that the ALJ failed to develop the record regarding

4    plaintiff's alleged mental impairment of depression.  (Pl.'s Mot. for Summ. J. at 10-12.)  The

5    ALJ considered at length plaintiff's claims of mental impairments, specifically depression and

6    anxiety, and found at step two of the five-step analysis that plaintiff did not have a severe mental

7    impairment.  (AT 26.)  Plaintiff does not expressly challenge the ALJ's determination at step two

8    regarding plaintiff's claimed mental impairment, but contends that the ALJ should have more

9    fully developed the record with respect to plaintiff's symptoms of depression.  Plaintiff relies on

10   his own testimony and the purported "diagnoses" of depression made by Ms. Metro, a

11   physician's assistant, and Satish Sharma, M.D., who performed an internal medicine consultation

12   of plaintiff.[7]  (See AT 194, 198, 399, 404.)  Although plaintiff does not specifically address the

13   legal standards applicable to a finding at step two, those standards are implicated to a degree.

14                At step two of the sequential evaluation, the ALJ determines whether the claimant

15   has a medically "severe" impairment or combination of impairments.  See 20 C.F.R.

16   § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).  An

17   impairment is severe when it significantly limits a claimant's "physical or mental ability to do

18   basic work activities" and lasted or is expected to last "for a continuous period of at least 12

19   months."  See 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c), 416.909.  Basic work activities refer to

20   "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  Although

21   centered around the term "severe," "the step-two inquiry is a de minimis screening device to

22   dispose of groundless claims."  See Smolen, 80 F.3d at 1290.  The purpose is to identify "at an

23   early stage those claimants whose medical impairment is so slight that it is unlikely they would

24

25          [7]  Plaintiff acknowledges that "this testimonial and documentary evidence may not be
     sufficiently detailed to permit a precise finding as to the nature and extent of Ms. [sic] Murphy's
     residual mental function."  (Pl.'s Mot. for Summ. J. at 10-12.)  Of course, plaintiff has the burden
26   at step two to demonstrate that he has a severe impairment.

                                                    6

1  be disabled even if their age, education, and experience were taken into account." Bowen, 482

2  U.S. at 153.

3        In terms of establishing an impairment, 20 C.F.R. § 416.913(a) identifies the

4  potential "[s]ources who can provide evidence to establish an impairment."  Section 416.913(a)

5  further states: "We need evidence from acceptable medical sources to establish whether you have

6  a medically determinable impairment(s)."  Id.  Acceptable medical sources include licensed

7  physicians and licensed or certified psychologists, but expressly excludes physician's assistants,

8  who are considered "other sources."  Id. §§ 416.913(a)(1)-(2), 416.913(d)(1).  Additionally, 20

9  C.F.R. § 416.908, entitled "What is needed to show an impairment," states: "Your impairment

10  must result from anatomical, physiological, or psychological abnormalities which can be shown

11  by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental

12  impairment must be established by medical evidence consisting of signs, symptoms, and

13  laboratory findings, not only by your statement of symptoms."

14        Plaintiff contends that the ALJ failed to develop the record regarding plaintiff's

15  reported condition of depression.  An ALJ has a duty to develop the record under certain

16  circumstances in order to conduct a full and fair hearing.  See McLeod v. Astrue, 640 F.3d 881,

17  885 (9th Cir. 2011).  In Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001), the Ninth Circuit

18  Court of Appeals has held: "Ambiguous evidence, or the ALJ's own finding that the record is

19  inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an

20  appropriate inquiry.  The ALJ may discharge this duty in several ways, including: subpoenaing

21  the claimant's physicians, submitting questions to the claimant's physicians, continuing the

22  hearing, or keeping the record open after the hearing to allow supplementation of the record."  Id.

23  at 1150; accord McLeod, 640 F.3d at 885 ("The words are clear and unambiguous: an 'ALJ's

24  duty to develop the record further is triggered only when there is ambiguous evidence or when

25  the record is inadequate to allow for proper evaluation of the evidence.'") (quoting Mayes v.

26  Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)).

1          Here, plaintiff's argument that the ALJ was required to more fully develop the

2  record regarding plaintiff's depression fails for multiple reasons.  First, plaintiff's own testimony

3  cannot, by itself, establish an impairment, let alone a severe impairment.  <u>See</u> 20 C.F.R.

4  § 416.908.  Second, plaintiff's "diagnosis" of depression did not come from an acceptable

5  medical source.  Ms. Metro, a physician's assistant, noted plaintiff's "depression over loss of

6  function due to chronic shortness of breath" (AT 399), and that plaintiff "seems to be angry a lot

7  and he does feel like he is depressed" (AT 404).  Ms. Metro's assessments cannot establish

8  plaintiff's mental impairment because she is an "other source" and not an acceptable medical

9  source.[8]  <u>See</u> Soc. Sec. Ruling 06-03p (Aug. 9, 2006) ("Information from these 'other sources'

10 cannot establish the existence of a medically determinable impairment.").  Third, Dr. Sharma did

11 not diagnose plaintiff as suffering from depression—he noted without explanation a "history of

12 depression and anxiety."  (AT 198.)  Finally, the ALJ discussed the record at length in

13 determining that plaintiff did not have severe impairments consisting of depression and anxiety.

14 (AT 26.)  At bottom, the record pertaining to plaintiff's depression and anxiety is not ambiguous

15 such that the ALJ should have re-contacted Ms. Metro or Dr. Sharma or otherwise further

16 developed the record.

17       B.       <u>The ALJ Did Not Err In Rejecting Ms. Metro's and Dr. White's Opinions</u>

18          Next, plaintiff contends that the ALJ improperly rejected the opinions of Ms.

19 Metro and Dr. White.  (Pl.'s Mot. for Summ. J. at 12-15.)  Plaintiff addresses the opinions of Ms.

20 Metro and Dr. White under the same legal standard.  Although a different standard arguably

21 applies to the opinions of a treating physician and an "other source" such as Ms. Metro, the

22 undersigned evaluates Ms. Metro's and Dr. White's opinions assuming that the same standard

23 applies.

24 ////

25 _____

26        [8] Plaintiff has not attempted to establish that Ms. Metro should be considered an acceptable
   medical source under the facts of this case.

                                                    8

1        1.     Dr. White's Multiple Impairment Questionnaire

2        In or around October 2006, Dr. White, a pain medicine specialist who treated

3   plaintiff, completed a functional assessment form called the "Multiple Impairment

4   Questionnaire."  (AT 410-18.)  In that questionnaire, Dr. White ultimately opined that plaintiff

5   was unable to sustain competitive employment as a result of plaintiff's cervical and lumbar

6   degenerative disc disease and plaintiff's neuropathic pain.  In terms of a competitive work

7   environment, Dr. White opined that, among other things, plaintiff could sit for three hours in an

8   eight-hour workday, stand/walk for three hours in an eight-hour workday, lift or carry at most

9   five-to-ten pounds only occasionally, and could not push, pull, kneel, bend, or stoop at work.

10  The ALJ rejected Dr. White's opinions stated in the questionnaire.  (See AT 30.)

11       Turning to the applicable legal standards, the medical opinions of three types of

12  medical sources are recognized in social security cases: "(1) those who treat the claimant

13  (treating physicians); (2) those who examine but do not treat the claimant (examining

14  physicians); and (3) those who neither examine nor treat the claimant (nonexamining

15  physicians)."  Lester, 81 F.3d at 830.  Generally, a treating physician's opinion should be

16  accorded more weight than opinions of doctors who did not treat the claimant, and an examining

17  physician's opinion is entitled to greater weight than a non-examining physician's opinion.  Id.

18  Where a treating or examining physician's opinion is uncontradicted by another doctor, the

19  Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's

20  ultimate conclusions.  Id.  If the treating or examining doctor's medical opinion is contradicted

21  by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting

22  that medical opinion, and those reasons must be supported by substantial evidence in the record.

23  Id. at 830-31; accord Valentine, 574 F.3d at 692.  "'The ALJ can meet this burden by setting out

24  a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her]

25  interpretation thereof, and making findings.'"  Tommasetti, 533 F.3d at 1041 (quoting

26  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

9

1       Here, the parties do not dispute that Dr. White's opinion was contradicted by

2   multiple other physicians (see AT 27-30), and the undersigned concludes that the ALJ's rejection

3   of Dr. White's functional assessment is supported by specific and legitimate reasons.  First, the

4   ALJ reasoned that Dr. White's severe functional assessment was not supported because there

5   were "no objective findings in Dr. White's medical records that indicate the claimant has such

6   debilitating impairments that it would preclude all jobs in the workforce."  (AT 30.)  The ALJ set

7   forth plaintiff's medical history at length (AT 27-30) and stated that, "[a]s outlined above, there

8   were no indications of radiculopathy related to claimant's degenerative disc disease of the

9   cervical and lumbar spine" (AT 30).  An ALJ may rely on a lack of objective evidence of a

10  disabling condition in rejecting a physician's opinion.  See, e.g., Bray, 554 F.3d at 1228 (stating

11  that "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if

12  that opinion is brief, conclusory, and inadequately supported by clinical findings.'") (citing

13  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)) (modification in original).  Plaintiff

14  correctly points out that there were x-rays and MRI scans in the record regarding plaintiff's back

15  condition, but plaintiff does not point to any medical evidence that undercuts the ALJ's

16  reasoning.  The ALJ performed her task as provided in Magallanes, and the undersigned is

17  compelled not to disturb the ALJ's conclusion.

18      Second, as noted by the ALJ, Dr. White's functional assessment is significantly

19  undercut by plaintiff's performance of work around the time Dr. White completed the

20  questionnaire, and afterward.  Despite Dr. White's opinion regarding plaintiff's extreme

21  functional limitations, plaintiff was able to perform unpaid work on a worm farm in December

22  2005 and January 2006.  (AT 265-66.)  Plaintiff reported to Dr. White that he as "working

23  actively in [a] worm farm," and plaintiff was described by Dr. White as "enthusiastically talking

24  about all the diff[erent] points in worm farming."  (AT 265.)  Although plaintiff noted that he

25  had pain due to shoveling, plaintiff nonetheless reported being "very active."  (AT 266.)  This

26  work, which appears to have occurred over at least a three-week period, undercuts Dr. White's

1   assessment of plaintiff.  Furthermore, in October 2007, plaintiff reported to Dr. White that he

2   was assisting with the care of a bedridden man in exchange for room and board.  (AT 427.)

3   Plaintiff stated that he was "still active 'doing what [he] can.'"  (Id.)  All of this work

4   substantially undercut's Dr. White's RFC for plaintiff, and the ALJ appropriately cited that work

5   as a specific and legitimate reason for discounting Dr. White's medical opinion.  (See AT 30

6   ("These activities required significantly higher functional abilities than assessed by Dr. White.").)

7   Taking the ALJ's findings and reasons for rejecting Dr. White's opinion together with the ALJ's

8   thorough review of the records, the undersigned concludes that the ALJ did not err in rejecting

9   Dr. White's opinions stated in the Multiple Impairment Questionnaire.

10                  2.      Ms. Metro's Pulmonary Impairment Questionnaire

11                  The ALJ also rejected the opinion of Ms. Metro, a physician's assistant who

12  began seeing plaintiff on November 28, 2005, regarding plaintiff's asthma and chronic

13  obstructive pulmonary disease ("COPD"), and saw plaintiff every three-to-four months as

14  needed.  (AT 395.)  Ms. Metro's opinions were set forth in a form entitled "Pulmonary

15  Impairment Questionnaire" and dated September 6, 2007.  (AT 395-401.)  Ms. Metro opined

16  that, among other things, plaintiff could sit for six hours in an eight-hour workday, stand/walk for

17  two hours in an eight-hour workday, lift or carry at most five pounds but only occasionally, and

18  that plaintiff needed to avoid odors, fumes, humidity, dust, perfumes, gases, solvents/cleaners,

19  cigarette smoke, and soldering fluxes.  (AT 398, 400-01.)  The ALJ gave Ms. Metro's findings

20  "little weight."  (AT 31.)  Although the ALJ gave Ms. Metro's findings little weight, in rejecting

21  Ms. Metro's findings the ALJ stated: "In order to accommodate the claimant's diagnosis of

22  asthma/COPD, the [RFC] set forth above restricts the claimant from concentrated exposure to

23  fumes, dust and air pollutants."  (Id.)

24                  Plaintiff has cited no authority, and the undersigned has not found any, that

25  applies the traditional rules related to the evaluation and rejection of a treating or examining

26  physician to physician's assistants, who are considered "other sources" and not "acceptable

1   medical sources." See 20 C.F.R. §§ 416.913(a)(1)-(2), 416.913(d)(1).  Social Security Rule 06-

2   03p recognizes that regulations regarding the evaluation of opinion evidence, such as 20 C.F.R.

3   § 416.927, do not address how to evaluate the opinions of "other sources" such as physician's

4   assistants who have seen the claimant in their professional capacity.  See Soc. Sec. Ruling 06-

5   03p.  Although not binding on this court, Social Security Ruling 06-03p provides that: "Opinions

6   from these medical sources, who are not technically deemed 'acceptable medical sources' under

7   our rules, are important and should be evaluated on key issues such as impairment severity and

8   functional effects, along with the other relevant evidence in the file."

9           Although the standards for evaluating a physician's assistant's opinions are not

10  entirely clear, the ALJ properly considered and discounted Ms. Metro's opinions even under the

11  standards applied to the rejection of a physician.  As with Dr. White, the parties do not dispute

12  that Ms. Metro's findings were in conflict with other medical opinions in the record.  The

13  undersigned concludes that the ALJ provided specific and legitimate reasons for discounting Ms.

14  Metro's findings.

15          First, the ALJ reasoned that plaintiff's medical records from his visits with Ms.

16  Metro did not corroborate the functional limitations set by Ms. Metro.  (See AT 31.)  Plaintiff

17  does not attack this reasoning in his motion for summary judgment and did not file a reply brief

18  in response to the Commissioner's support of this reason offered by the ALJ.  Without more

19  from plaintiff, the undersigned concludes that this reason is specific and legitimate.

20          Second, the ALJ rejected Ms. Metro's findings because "[i]t appear[ed] the

21  claimant's self-estimations of his own functional limitations were included in the PIQ as [Ms.

22  Metro's] medical records at Alpine fails [sic] to corroborate the need for such restrictions."

23  (AT 31.)  Ms. Metro's treatment notes indicate that Ms. Metro relied heavily on plaintiff in order

24  to complete the Pulmonary Impairment Questionnaire.  On September 5, 2007, the day before

25  Ms. Metro completed the questionnaire, plaintiff met with Ms. Metro at Ms. Metro's request in

26  order to fill out the form.  (AT 329.)   In relevant part, Ms. Metro's treatment notes from the

1    September 5, 2007 appointment state: "51 year old male is here for followup on his asthma and

2    COPD.  Also I had him come in as the National Social Security Disability Advocate has

3    submitted a form for me to fill out which is entitled a pulmonary impairment questionnaire and I

4    needed the patient here to do that.  He agrees to go over these forms with me." (Id.)  Ms. Metro's

5    progress notes for September 5, 2007, state: "Appointment for paperwork."  (AT 330.)  The ALJ

6    properly rejected Ms. Metro's findings on the grounds that those findings largely consisted of

7    plaintiff's self-reports, and, as discussed below, the ALJ properly found that plaintiff was not a

8    credible witness.  See cf. Tommasetti, 533 F.3d at 1041 ("An ALJ may reject a treating

9    physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been

10   properly discounted as incredible.").

11          Third, the ALJ noted that plaintiff's asthma, COPD, or both were exacerbated

12   when plaintiff ran out of medication, was not using enough medication, or was not using the

13   correct types of medication.  (AT 31.)  The ALJ's ground for undermining Ms. Metro's

14   functional assessment is a specific and legitimate one.  In his motion, plaintiff acknowledges

15   these facts, but argues that the ALJ should have further developed the record on this point.  (Pl.'s

16   Mot. for Summ. J. at 15.)  The undersigned finds no basis for developing the record further.

17          The ALJ provided specific and legitimate reasons for discounting Ms. Metro's

18   findings and even accounted for some of those findings in the RFC.  Accordingly, the

19   undersigned concludes that the ALJ's treatment of Ms. Metro's opinions was not erroneous.

20          C.    The ALJ's Credibility Determination Was Not Erroneous

21          Finally, plaintiff attacks the ALJ's credibility determination.  Although the ALJ

22   found that plaintiff was "generally not credible" and that plaintiff's "reporting [was] so in excess

23   of any objectively supported limitations [that] it [was] given little weight" (AT 27), the ALJ did

24   not reject all of plaintiff's testimony.  Notwithstanding the credibility determination, the ALJ

25   restricted the RFC beyond what the record supported to "account for [plaintiff's] subjective

26   complaints and testimony at the hearing."  (AT 27, 29-30.)  For example, the ALJ's RFC

13

1    precluded plaintiff from walking long distances and reduced to only an occasional basis

2    plaintiff's ability to reach overhead and fingering and handling.  (AT 30.)  Thus, contrary to

3    plaintiff's characterization of the ALJ's discussion of plaintiff's credibility, the ALJ did not

4    wholly reject plaintiff's testimony.  Instead, the ALJ thoroughly discussed plaintiff's testimony

5    and the reasons why the ALJ concluded that plaintiff's testimony regarding the degree of his

6    functional limitations was unsupported by the record as a whole.  (See AT 27-30.)

7            In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the

8    ALJ's task with respect to assessing a claimant's credibility:

9                   To determine whether a claimant's testimony regarding subjective
             pain or symptoms is credible, an ALJ must engage in a two-step analysis.
10           First, the ALJ must determine whether the claimant has presented
             objective medical evidence of an underlying impairment which could
11           reasonably be expected to produce the pain or other symptoms alleged.
             The claimant, however, need not show that her impairment could
12           reasonably be expected to cause the severity of the symptom she has
             alleged; she need only show that it could reasonably have caused some
13           degree of the symptom.  Thus, the ALJ may not reject subjective symptom
             testimony . . . simply because there is no showing that the impairment can
14           reasonably produce the degree of symptom alleged.

15                  Second, if the claimant meets this first test, and there is no
             evidence of malingering, the ALJ can reject the claimant's testimony about
16           the severity of her symptoms only by offering specific, clear and
             convincing reasons for doing so. . . .

17

18   Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "The ALJ must

19   specifically identify what testimony is credible and what testimony undermines the claimant's

20   complaints."  Valentine, 574 F.3d at 693 (quotation marks omitted) (quoting Morgan v. Comm'r

21   of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an

22   ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness,

23   inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct,

24   [claimant's] daily activities, [her] work record, and testimony from physicians and third parties

25   concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'"

26   Thomas, 278 F.3d at 958-59 (modification in original) (quoting Light v. Soc. Sec. Admin., 119

                                                    14

1   F.3d 789, 792 (9th Cir. 1997)); see also Burch, 400 F.3d at 680 ("In determining credibility, an

2   ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's

3   reputation for truthfulness and inconsistencies in claimant's testimony.").  If the ALJ's credibility

4   finding is supported by substantial evidence in the record, the court "may not engage in

5   second-guessing." Id. at 959.

6           Here, the ALJ discounted plaintiff's testimony regarding his functional limitations

7   for several reasons.  For example, the ALJ noted that although plaintiff claimed that he spent the

8   majority of his day lying down and resting, plaintiff was able, as discussed above, to actively

9   participate in his friend's worm farming operation and later assist in the care of his landlord's

10  bedridden husband.  (AT 27-28.)  The ALJ also doubted plaintiff's claims regarding an ability to

11  sit for only ten minutes given that plaintiff was able to sit through the hearing.  (AT 27.)

12  Although plaintiff expressed some discomfort during the hearing only after the ALJ asked

13  plaintiff about his ability to sit (AT 48), the ALJ permissibly considered observations made

14  during the hearing to assess plaintiff's credibility.  The ALJ also recounted at length plaintiff's

15  testimony about extreme functional limitations that plaintiff attributed to various conditions such

16  as COPD, but which were not supported by the record.  (AT 27-28.)  This discussion is supported

17  by the record.

18          In short, the ALJ did not discount plaintiff's testimony and conclude that plaintiff

19  was not functionally limited at all.  To the contrary, the ALJ conducted a thorough review of

20  plaintiff's claims of extreme functional limitations and contrasted those claims with the medical

21  evidence.  Based on the record as a whole, the ALJ found plaintiff not credible in regards to the

22  extent or degree of his limitations, and the ALJ assessed an RFC that was based on substantial

23  evidence in the record and still incorporated plaintiff's testimony where it was supported.  The

24  undersigned cannot conclude that the ALJ's credibility determination was erroneous or

25  unsupported by substantial evidence.

26  ////

IV.    <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment (Dkt. No. 11) is denied.

2.      The Commissioner's cross-motion for summary judgment (Dkt. No. 12) is granted.

3.      The Clerk of Court is directed to enter judgment in the Commissioner's favor.

IT IS SO ORDERED.

DATED:  August 24, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

16